**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

DANNY WEST,                                    )
                                               )
                    Petitioner,                )
                                               )
v.                                             )          **Case No. 05-CV-0654-CVE-TLW**
                                               )
LENORA JORDAN,                                 )
                                               )
                    Respondent.                )

### OPINION AND ORDER

Before the Court is *pro se* Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus

(Dkt. # 2). Respondent filed a response to the petition, and has provided the state court records

necessary for adjudication of Petitioner's claims (Dkt. ## 9, 10, 11). Petitioner filed a reply, with

exhibits (Dkt. ## 23, 24). For the reasons discussed below, the Court finds the petition should be

denied.

### BACKGROUND

During the afternoon of July 12, 2002, Petitioner entered a Toys R Us store[1] in Tulsa,

Oklahoma, and asked to speak to the manager on duty. He identified himself as a police detective

investigating a theft issue, and told the store manager he needed to speak to one of her employees.

Petitioner was wearing a tweed jacket and khaki pants, and was carrying a manilla folder. The store

manager, Amy Babb, believed him to be a police officer, and escorted him to a training room.

Shortly thereafter, Petitioner pointed a handgun at Ms. Babb and forced her to unlock the cash

office, together with a safe inside the office. After taking the cash from the safe and handcuffing Ms.

---

[1]      Petitioner sometimes refers to this store in his pleadings as the "Tru store."

Babb to the safe, Petitioner left the store. After a three week investigation, an arrest warrant was issued and a fugitive task force was directed to arrest Petitioner at an apartment in south Tulsa. Petitioner saw the officers approaching and fled into the apartment, seeking refuge in a bedroom closet. The officers instructed Petitioner to surrender. After several minutes he emerged from the closet with a straight razor held to his throat. Petitioner then cut his own throat. The officers secured him and tried to stop the bleeding even though Petitioner was struggling to get away.

Based on the events of July 12, 2002, Petitioner was charged, tried, and convicted by a jury of Robbery with a Firearm, After Former Conviction of Two or More Felonies (Count I), and Impersonating a Police Officer (Count II) in Tulsa County District Court, Case No. CF-2002-3970.[2] Petitioner was represented at trial by attorney Robert Ridenour. Assistant District Attorney Dana Bogie prosecuted the case on behalf of the State of Oklahoma. At the conclusion of a two-stage trial, the jury recommended a sentence of seventy-five (75) years imprisonment for Count I, and one (1) year for Count II. On May 28, 2003, the trial court sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served concurrently.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Stephen Greubel, Petitioner raised four (4) claims as follows:

Proposition I:    Appellant West was twice put in jeopardy in violation of the Fifth Amendment when the trial court declared a mistrial without manifest necessity as to the first proceedings, and permitted the State to try Appellant West a second time on identical charges.

---

[2]    Petitioner's first trial on these charges was held February 11-14, 2003. The jury returned a verdict of not guilty on a third count of impersonating a police officer at a Ross Dress for Less store, but deadlocked on Counts I and II (each involving the events at the Toys R Us store). The judge declared a mistrial on those two counts, and Petitioner's second trial was held May 12-16, 2003. The second jury found him guilty of both Counts I and II.

Proposition II:     Appellant West's statement was obtained in violation of his Fifth
                    Amendment privilege, and the trial court erred in admitting the
                    statement into evidence.

Proposition III:    The jury was advised of the nature and length of sentences imposed
                    for each of Appellant West's prior convictions, thereby prejudicing
                    the jury's sentencing decision and permitting the jury to speculate as
                    to parole eligibility.

Proposition IV:     The prosecution's improper closing argument denied Appellant West
                    a fair sentencing hearing.

See Dkt. # 9, Ex. 1. In an unpublished summary opinion, filed July 27, 2004, in Case No.

F-2003-584, the OCCA rejected each of Petitioner's claims and affirmed the Judgment and Sentence

of the trial court (Dkt. # 9, Ex. 3). Petitioner did not seek a *writ of certiorari* from the United States

Supreme Court.

Petitioner filed an application for post-conviction relief in the state district court on April 18,

2005. See Dkt. # 3 at 4. Appearing *pro se*, Petitioner raised nine (9) grounds of error:

Ground 1:     Court abused its discretion by allowing fingerprint examiner(s) to testify that
              latent print found at Tru store was definitive "match" to Petitioner's
              fingerprint, in allowing Mr. Yerton to testify based upon unverified
              examination, and by instructing and allowing the jury to give "any"
              consideration at all to the testimony of Mr. Yerton in the February 2003 trial.

Ground 2:     The Appellant's arrest without probable cause or warrant and the affiant of
              the search warrant not being present during execution of warrant during
              arrest were in violation of Petitioner's 4th and 5th U.S.C.A. rights, and
              Oklahoma statute 22 O.S. § 1227.

Ground 3:     In violation of Oklahoma statute 22 O.S. § 11, U.S.C.A. 5, and Okla. Const.
              Art. 2 § 21, the Petitioner was twice put in jeopardy through duplicitous
              counts, Judge abused discretion in not dismissing count #2.

Ground 4:     In court identifications were prejudicial and an abuse of the court's
              discretion, violating Oklahoma statute 12 O.S. § 2401 and the Petitioner's
              constitutional right to due process, U.S.C.A. 5.

3

Ground 5:   Court abused discretion in disregarding acquittal of count #3, evidence of other crimes, that was allowed by the court from the State in an attempt to prove Petitioner's guilt, when court should have dismissed all three counts based upon acquittal of count # 3, thus putting the Petitioner twice in jeopardy.

Ground 6:   Court abused discretion in allowing second page to be admitted in district court based upon prosecutor's knowingly perjured motion to remand for second page, as well as not giving the Petitioner a presentencing investigation prior to final sentencing.

Ground 7:   Photos admitted into trial were prejudicial and in violation of title 12 O.S. § 2403, Oklahoma statute.

Ground 8:   Evidence presented at trial, February 11-14, 2003, was insufficient to find the Petitioner guilty, and therefore trial court erred in not granting the Petitioner's pre-trial motion to dismiss, and by granting the state a re-trial, thus violating the Appellant's rights to due process.

Ground 9:   Ineffective assistance of trial and appellate counsels.

See Dkt. # 9, Ex. 4. The district court denied relief on June 2, 2005 (Dkt. # 2, attachment). Petitioner appealed (Dkt. # 9, Ex. 4). The OCCA affirmed the district court's denial of post-conviction relief by Order filed September 12, 2005, in Case No. PC-2005-637 (Dkt. # 9, Ex. 5).

Petitioner now seeks federal habeas corpus relief.  In his petition and brief (Dkt. ## 2, 3), filed November 16, 2005, Petitioner raises thirteen (13) grounds[3] for relief:

Ground 1:   Petitioner West was twice put in jeopardy in violation of the Fifth Amendment when the trial court declared a mistrial without manifest necessity as to the first proceedings, and permitted the State to try Petitioner a second time on the identical charges.

Ground 2:   Petitioner's statement was obtained in violation of his Fifth Amendment privilege, and trial court erred in admitting the statement into evidence.

---

[3]   The first four grounds are identical to the propositions raised by Petitioner on direct appeal; grounds 5-13 are the same as those raised in his post-conviction proceedings.

Ground 3:   The jury was advised of the nature and length of sentences imposed for each of Petitioner's prior convictions, thereby prejudicing the jury's sentencing decision and permitting the jury to speculate as to parole eligibility.

Ground 4:   The prosecutor's improper closing arguments denied Petitioner a fair sentencing hearing, violating his 14th Amendment right.

Ground 5:   Court abused its discretion by allowing fingerprint examiner(s) to testify that latent print found at Tru store was a definitive "<u>match</u>" to Petitioner's fingerprint, in allowing Mr. Yerton to testify based upon unverfied [sic] examination, and by instructing and allowing the jury to give "any" consideration at all to the testimony of Mr. Yerton.

Ground 6:   The Appellant's arrest without probable cause or warrant and the affiant of the search warrant not being present during execution of warrant during arrest were in violation of Petitioner's 4th & 5th U.S.C.A. rights, and Oklahoma statute 22 O.S. § 1227.

Ground 7:   In violation of Oklahoma statute 22 O.S. § 11, U.S.C.A. 5, and Okla. Const. Art. 2 § 21, the Petitioner was twice put in jeopardy through duplicitous counts, Judge abused discretion in not dismissing count #2, and misapplied state and federal law.

Ground 8:   In court identifications were prejudicial and an abuse of the court's discretion, violating Oklahoma statute 12 O.S. § 2401 and the Petitioner's constitutional right to due process, U.S.C.A. 5.

Ground 9:   Court abused discretion in disregarding acquittal of count #3, evidence of other crimes, that was allowed by the court from the State in an attempt to prove Petitioner's guilt, when court should have dismissed all three counts based upon acquittal of count # 3, thus putting the Petitioner twice in jeopardy.

Ground 10:   Court abused discretion in allowing second page to be admitted in district court based upon prosecutor's knowingly perjured motion to remand for second page, as well as not giving the Petitioner a presentencing investigation prior to final sentencing.

Ground 11:   Photos admitted into trial were prejudicial and in violation of title 12 O.S. § 2403, Oklahoma statute.

Ground 12: Evidence presented at trial, February 11-14, 2003, was insufficient to find the Petitioner guilty, and therefore trial court erred in not granting the Petitioner's pre-trial motion to dismiss, and by granting the state a re-trial, thus violating the Appellant's rights to due process.

Ground 13: Ineffective assistance of trial and appellate counsels.

See Dkt. # 3. In response to the petition, Respondent asserts that Petitioner's claims are either procedurally barred, not cognizable in these proceedings, or do not justify relief under 28 U.S.C. § 2254(d). See Dkt. # 9.

## ANALYSIS

### A. Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). The Court finds that the exhaustion requirement is satisfied in this case because Petitioner's claims were fairly presented to the OCCA on either direct or post-conviction appeal.  In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B. State law claims not cognizable (Grounds 6, 7, 8, 10, and 11)

Petitioner alleges as part of his sixth ground for relief that his arrest was in violation of Okla. Stat. tit. 22, § 1227 (Dkt. # 3). In ground seven he asserts violations of Okla. Const. art. 2, § 21 and Okla. Stat. tit. 22, § 11. His eighth ground includes a claim that the trial court violated Okla. Stat. tit. 12, § 2401. In ground ten he alleges violations of Okla. Stat. tit. 21, § 34 and Okla. Stat. tit. 22, § 982.  Ground eleven references a violation of Okla. Stat. tit. 12, § 2403. Some of these grounds also include claims of a federal constitutional violation. To the extent the referenced claims assert violations of Oklahoma law or the Oklahoma Constitution, the claims shall be denied because they

6

are not cognizable on federal habeas corpus review.  A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions).  Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id.; 28 U.S.C. § 2241.  Petitioner's state law claims are not cognizable in this federal habeas corpus proceeding, and shall be denied on that basis without further analysis.

**C.      Claims adjudicated by the OCCA on direct appeal**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 150-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  In this case, the OCCA adjudicated Petitioner's claims on

direct appeal or in post-conviction proceedings.  Therefore, to the extent Petitioner's claims are

cognizable and not procedurally barred, those claims shall be reviewed pursuant to § 2254(d).

### 1.     Double jeopardy after mistrial (ground 1)

Petitioner's first jury trial for the Toys R Us crimes was held February 11-14, 2003. The jury

began deliberations on February 14, and sent several notes to the judge evidencing their difficulties

in reaching a unanimous decision. Sometime later that same day, after concluding that the jury was

deadlocked, the trial judge declared a mistrial on Counts 1 and 2. Both Petitioner and the prosecutor

objected to the mistrial at the first trial. See Tr. Trans. Feb. 11-14, 2003, Vol. II at 400. Petitioner

was found guilty of Counts 1 and 2 in his second trial held May 12-16, 2003.

In ground one, Petitioner alleges that he was subjected to double jeopardy because the trial

court improperly declared a mistrial without justification and manifest necessity. This claim was

raised on direct appeal after the second trial, and rejected by the OCCA. The state appellate court

found that the trial judge "did not abuse her discretion in declaring a mistrial as a result of the

deadlocked jury in Appellant's prior trial, and Appellant has not been subjected to double jeopardy."

See Dkt. # 9, Ex. 3 at 2. Respondent contends that the decision of the OCCA was not contrary to,

or an unreasonable application of, federal law (Dkt. # 9 at 4).

"The constitutional protection against double jeopardy unequivocally prohibits a second trial

following an acquittal." Arizona v. Washington, 434 U.S. 497, 503 (1978). Furthermore, "[b]ecause

jeopardy attaches before the judgment becomes final, the constitutional protection also embraces

the defendant's 'valued right to have his trial completed by a particular tribunal.'" Id. (citation

omitted).  The Supreme Court explained that "[e]ven if the first trial is not completed, a second

prosecution may be grossly unfair" because it "increases the financial and emotional burden on the

accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." Id. at 503-04 (footnotes omitted).  "The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one. . . .  Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration." Illinois v. Somerville, 410 U.S. 458, 471 (1973) (citation omitted).  In view of the importance of the defendant's right, the prosecutor bears the heavy burden of demonstrating "manifest necessity" for any mistrial declared over the objection of the defendant in order to avoid the double jeopardy bar. Washington, 434 U.S. at 505; United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824).  However, "[t]he trial judge's decision to declare a mistrial when he considers the jury deadlocked is . . . accorded great deference by a reviewing court." Washington, 434 U.S. at 510. The Washington court noted that the rationale for deference in a hung jury situation is that the trial court is in the best position to assess all the factors which must be considered in making the discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate. Id. at n.28.

In the instant case, Petitioner is not entitled to relief on his double jeopardy claim unless he demonstrates that the OCCA's rejection of his claim was contrary to, or an unreasonable application of, the above-cited principles established by the Supreme Court. Following the Supreme Court's instructions in Washington, this Court recognizes that the trial judge's determination that a mistrial was necessary "is entitled to special respect." Washington, 434 U.S. at 510; see also Walck v. Edmondson, 472 F.3d 1227, 1236 (10th Cir. 2007). Upon review of the record surrounding the

9

discharge of the first jury, see Dkt. # 10, Tr. Trans. Feb. 11-14, Vol. II, the Court finds that the trial

judge exercised sound discretion, and that there was a manifest necessity for the declaration of a

mistrial. The jury passed seven notes to the judge during the course of their deliberations. One note

stated:

> We as jurors are at this time, can not come to a unanimous decision on this case.
> Also, we don't think we will come to any other decision at any time - What do you
> want us to do? Thank you.

See Dkt. # 23, Ex. part 2 at 36. The judge responded by giving the jury an Allen[4] charge, advising

them in part as follows:

> Ladies and gentlemen of the jury, in response to your note, I will instruct you that
> this case has taken approximately four days of trial time. You have deliberated for
> approximately three hours. You report to me that you are experiencing difficulty in
> arriving at a verdict. This is an important case and a serious matter to all concerned.
>
> You are the exclusive judges of the facts, the Court is the judge of the law. Now I
> must respectfully and earnestly request of you that you return to your jury room and
> resume your deliberations. Further open and frank discussion of the evidence and law
> submitted to you in this case may aid you in arriving at a verdict.

See Tr. Trans. Feb. 11-14, 2003, Vol. II at 397-98. Over the next few hours of deliberation, the jury

sent out several more notes indicating they were having trouble reaching a verdict. One stated:

> We are still deadlocked! There is no hope of unanimous verdict on cases one & two.
> Verdict reached on # 3. Three smokers are on verge of fit. Suggestion?

See Dkt. # 23, Ex. part 2 at 38. The trial judge ultimately accepted the jury verdict on Count 3 and

declared a mistrial as to Counts 1 and 2 (Tr. Trans. Feb. 11-14, 2003, Vol. II at 400).

---

[4]      Allen v. United States, 164 U.S. 492 (1986).

The record before this Court demonstrates that Petitioner's second trial did not violate the double jeopardy provision of the Fifth Amendment. The trial court judge exercised sound discretion in declaring a mistrial. She did not act hastily in reaching her decision. The Court finds that the OCCA's conclusion that the trial court correctly declared a mistrial on grounds of manifest necessity is not contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, the Court concludes that Petitioner is not entitled to habeas corpus relief on his ground one double jeopardy claim.

### 2.    Admission of statements prior to <u>Miranda</u> warning (ground 2)

In his second proposition of error, Petitioner claims that his rights guaranteed by the Fifth Amendment were violated by the introduction at trial of statements he made to police during his arrest. Specifically, he challenges the admission of Tulsa Police Detective Daniel James Ward's testimony that Petitioner said, "I'm dying, tell my family Carl Irons made me do the robberies." <u>See</u> Tr. Trans. May 12-16, 2003, Vol. IV at 676. Petitioner also challenges the admission of his statement to Detective Ward that, "I had to get money to pay for crack." <u>Id.</u> at 677. Petitioner had not been read his rights under <u>Miranda</u> at the time he made these statements, and he argues they were improperly introduced into evidence at trial. Petitioner raised this claim on direct appeal. The OCCA found that, " [T]he trial judge's ruling admitting Petitioner's statements [to Detective Ward] as voluntarily given is supported by the record and was not an abuse of discretion." <u>See</u> Dkt. # 9, Ex. 3 at 2.  Respondent contends that Petitioner is not entitled to relief on this claim because the OCCA's finding was not contrary to, or an unreasonable application of, Supreme Court law.

11

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself.  In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court concluded that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Id. at 467. A question frequently presented to the courts in cases in this area is whether particular police conduct constitutes interrogation. In Miranda, it was suggested that interrogation referred only to actual "questioning initiated by law enforcement officers." Id. at 444; Arizona v. Mauro, 481 U.S. 520, 526 (1987). Clarification was provided in Rhode Island v. Innis, 446 U.S. 291 (1980), when the Supreme Court reviewed the "interrogation environment" and found that some police practices were a violation of Miranda even though no express questioning by police was involved. Id. at 299-301. The Court wrote:

> [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.  But since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

Innis, 446 U.S. at 301-02 (footnotes omitted) (emphasis in original). In the Innis case, the Supreme Court focused on the meaning of an "interrogation" under Miranda. The Court concluded that Mr.

Innis' incriminating statement, made in response to a conversation between police officers but not directed to him, was not a violation of the rules established by Miranda. Noting that the conversation was "nothing more that a dialogue between two officers to which no response from [Innis] was invited," the Innis Court determined that it could not fairly conclude that Mr. Innis was "subjected to the 'functional equivalent' of questioning." Innis, 446 U.S. at 302. Further, there was nothing to support an argument that the policemen "should have known that their conversation was reasonably likely to elicit an incriminating response from the respondent." Id.

To support his claim of a Fifth Amendment violation, Petitioner maintains that the police initiated custodial interrogation through their statements concerning fingerprint evidence and the crime. He argues that the police statements to him that he was being arrested because they had fingerprint evidence from the Toys R Us store were "calculated to induce a response of some type from Petitioner West." See Dkt. # 23 at 9. He asserts that the statements of the officers urging him to come out of the closet where he was hidden are the types of practices forbidden by Miranda and subsequent cases. Id. Miranda, however, does not bar the admission of volunteered statements that are not in response to police questioning. Miranda, 384 U.S. at 478. It is clear from the facts before the Court that Petitioner's statements were voluntarily made and not in response to any questioning, statements, or actions of the police officers. While the Court agrees with Petitioner that the police statements regarding fingerprint evidence were designed to induce a response from Petitioner, the response they were soliciting was for Petitioner to come out of the closet and surrender to arrest. See Tr. Trans. May 12-16, 2003, Vol. IV at 668-78.  Further, the incriminating statements were made by Petitioner without prompting by officers. The officers had no reason to believe that their urging Petitioner to come out of the closet would result in his incriminating statements.

Therefore, the Court finds that the officers' actions and statements encouraging Petitioner to come out from the closet did not rise to the level of the "functional equivalent" of interrogation under Innis. There is nothing in the record to indicate that Detective Ward and the other officers should have known their statements urging Petitioner to surrender because they had fingerprint evidence would elicit Petitioner's voluntary statement about the robbery and his need for money. The record does not suggest that the actions of the officers constituted the kind of psychological ploy that could be treated as the functional equivalent of interrogation. Accordingly, this Court finds that admission of Petitioner's statements, through Detective Ward's testimony, was not a violation of Petitioner's Fifth Amendment rights. The OCCA's denial of relief on this issue was not an unreasonable application of Supreme Court law, nor was it an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)(2). Habeas relief is denied on this ground.

### 3.       Second stage admission of prior judgments and sentences (ground 3)

In his third proposition of error, Petitioner argues that the trial court erred in admitting evidence of the actual time served on his prior convictions and sentences. The OCCA ruled that the evidence, even though it contained the date and term of his sentences, was properly admitted to prove prior convictions (Dkt. # 9, Ex. 3 at 3). This Court can grant relief only for violations of federal law. Whether admission of evidence violated state evidence rules is not a concern of this habeas action. Petitioner may only obtain habeas relief for an improper state evidentiary ruling "if the error was 'so grossly prejudicial' [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002) (quoting Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002)); see also Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974). Petitioner has failed to make that showing. The OCCA's

decision affirming the admission of evidence concerning Petitioner's prior convictions and sentences was not contrary to or an unreasonable application of clearly established federal law. Habeas relief shall be denied on Petitioner's ground three claim.

### 4.       Prosecutorial misconduct (ground 4)

As his fourth proposition of error, Petitioner complains that the prosecutor engaged in misconduct during closing arguments.  Specifically, he argues that the following statements made by the prosecutor in second stage closing were improper and "designed to induce decisions based on emotional reactions of the jurors." See Dkt. # 3.

> Statement #1:      [T]his defendant has been weaving a web of deception for a long time, as can be proven by the evidence that the State will give you in the form of certified copies of judgment and sentences, that this defendant has been committing crimes for 13 years.

See Tr. Trans. May 12-16, 2003, Vol. IV at 773. The trial judge sustained an objection by defense counsel to this argument (Id. at 773-74).

> Statement # 2:      And remember -- remember from the first stage what store he chose to rob, a Toys R Us.

Id. at 779. Again, the trial judge sustained defense counsel's objection to this comment. Id. at 780.

> Statement # 3:      [B]e light on him because he committed one, two, three, four, five, six, seven, eight, nine, ten and eleven? Ladies and gentlemen, I am not going to stand up here and try to tell you exactly what you want to do as jurors. I can tell you for the State of Oklahoma that if you go through and you look at these judgment and sentences, you will find that this defendant has already been sentenced up to 50 years.

> The State of Oklahoma would argue that the minimum is 20.
> If you want to start at the minimum, give him the minimum
> for 11 times. Give him 200-plus years, ladies and gentlemen.
> Let him know the web of terror stops now.

Id. at 780-81. No objection was made to this portion of the prosecutor's argument.

Petitioner also claims he was damaged by the following alleged improper statements made

during the prosecutor's first stage closing argument.

> Statement # 4:   You know what? Do you know what all this flowed from?
> This defendant terrorizing and robbing people. That's what
> this has flowed from.
>
> Us having to investigate and find and put on trial and put
> witnesses on the stand, and all of our time has flowed from
> this man committing crimes.

Id. at 747. Defense counsel objected to these statements as "improper argument." The trial court

sustained the objection. Id.

On direct appeal, Petitioner complained of the same four instances of alleged prosecutorial

misconduct. As noted above, three of the statements were made in second stage closing arguments,

and one was made during first stage closing arguments. The OCCA, however, addressed only the

second stage comments in rejecting this claim:

> With respect to proposition four, we find the prosecutor's closing arguments in the
> sentencing stage, when viewed in context of defense counsel's arguments, do not
> amount to plain error, and any underlying error was cured by the sustaining of
> objections and admonishment. *Williams v. State*, 2001 OK CR 9, ¶ 19, 53, 55, 22
> P.3d 702, 711, 717.

See Dkt. # 9, Ex. 3 at 3. A careful reading of the transcript reveals that objections were made and

sustained to statement ## 1, 2, and 4. No admonishment to the jury was made. Statement # 3 was

not objected to by counsel. Although a statement made immediately after the quoted portion of

statement # 3 was deemed improper by the trial court and an admonishment was given to the jury,

16

Petitioner does not challenge that particular language in this ground. The OCCA's summary disposition of this issue was neither thorough nor entirely accurate. Nonetheless, a decision was reached on the merits by the OCCA and must be examined by this Court pursuant to 28 U.S.C. § 2254(d). Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999).

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir.1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

After reviewing the entire trial transcript, this Court finds that the OCCA's rejection of this claim was not an unreasonable application of constitutional law. The Court finds that the alleged misconduct by the prosecutor did not plausibly tip the scales in favor of the prosecution. The State's evidence against the defendant was strong. Store manager Amy Babb positively identified Petitioner as the person who forced her, at gunpoint, to open the cash office and safe (Tr. Trans. May 12-16, 2003, Vol. III at 465-68). She was in close contact with Petitioner for approximately fifteen minutes (Id. at 465). A latent fingerprint found at the scene matched Petitioner's known prints (Id. at 568). Finally, Petitioner made incriminating admissions upon his arrest (Tr. Trans. May 12-16, 2003, Vol IV at 676-77). In light of the strength of the evidence presented in this case, the Court finds no

17

reasonable probability that the verdict and sentencing would have been different without the incidents of alleged misconduct by the prosecutor and concludes that the proceedings against Petitioner were not rendered fundamentally unfair by prosecutorial misconduct.  Pursuant to § 2254(d), habeas corpus relief on this claim shall be denied.

###### 5.	Ineffective assistance of appellate counsel (part of ground 13)

In ground thirteen, Petitioner claims his appellate counsel filed a brief that was "grossly negligent and deficient" for failing to raise the eight issues that he raised *pro se* on post-conviction but had been "overlooked" by appellate counsel. See Dkt. # 3 at 16. The OCCA rejected this claim of ineffective assistance of appellate counsel on post-conviction appeal, finding that Petitioner did not establish his counsel's performance was deficient under the standards enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Dkt. # 9, Ex. 5 at 2. For reasons detailed in section D below, the Court concludes that appellate counsel was not constitutionally ineffective. The OCCA's decision was not contrary to or an unreasonable application of Supreme Court law. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

##### D.	Procedural Bar (grounds 5-12, part of ground 13)

The record confirms that the issues raised in Petitioner's fifth through twelfth grounds were not presented to the OCCA on direct appeal. Further, the portion of ground thirteen alleging ineffective assistance of trial counsel was not raised on direct appeal. These claims were raised for the first time in Petitioner's post-conviction proceedings. In its order affirming the district court's denial of post-conviction relief, the OCCA stated:

> In this matter, Petitioner has asserted nine (9) propositions of error, and has filed a motion to obtain trial records and transcripts at public expense. With the exception of a limited claim of ineffective appellate counsel, all of the propositions of error asserted by Petitioner in this proceeding either were raised or could have been raised

18

during his trial proceedings or in his direct appeal. All issues that could have and should have been previously raised are waived and may not be the basis of this post-conviction application. 22 O.S. 2001, § 1086; *Fowler v. State*, 1995 OK CR 29, ¶2, 896 P.2d 566, 569.

Dkt. # 9, Ex. 5 at1-2.

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'" Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)). The Tenth Circuit has recognized that "Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground" barring federal habeas corpus review. Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999).

Applying the principles of procedural bar to this case, the Court concludes that Petitioner's fifth through twelfth grounds are procedurally barred. The OCCA's procedural bar, based on Petitioner's failure to raise these grounds on direct appeal, is an "independent" state ground because state law provided "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. Additionally, the procedural bars imposed on these claims were based on "adequate" state grounds

19

sufficient to bar the claims on federal habeas corpus review. See Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993). The OCCA routinely bars claims that could have been but were not raised on appeal.

As to the adequacy of the procedural bar imposed on Petitioner's claim of ineffective assistance of trial counsel (part of ground 13), the Tenth Circuit Court of Appeals has recognized that countervailing concerns may justify an exception to the general rule of procedural default. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)). The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)). The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998). In English, the Circuit Court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

After reviewing the record in this case in light of the factors identified in English, the Court finds that the procedural bar imposed by the state courts on Petitioner's ground thirteen ineffective assistance of trial counsel claim is based on grounds adequate to preclude federal habeas review. Petitioner was represented at trial by attorney Robert Ridenour. On direct appeal, Petitioner was

20

represented by attorney Stephen Greubel. For purposes of the first requirement identified in <u>English</u>, the Court finds that Petitioner had the opportunity to confer with separate counsel during trial proceedings and on direct appeal.

The second <u>English</u> factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. <u>Id.</u> at 1263-64. In applying a procedural bar to Petitioner's claim of ineffective assistance of trial counsel, the OCCA specifically determined that the claim could have been but was not raised on direct appeal. <u>See</u> Dkt. # 23, Ex. C at 2-4. The Court finds that Petitioner's ground thirteen claim of ineffective assistance of trial counsel could have been resolved on the record alone. Furthermore, even if Petitioner's claim could not all be resolved on the record alone, Petitioner has not alleged that the Oklahoma remand procedure provided by Rule 3.11 of the *Rules of the Oklahoma Court of Criminal Appeals* was inadequate to allow him to supplement the record on his ineffective assistance of counsel claims. <u>See</u> <u>Hooks v. Ward</u>, 184 F.3d 1206, 1217 (10th Cir. 1999) (once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden shifts to the petitioner to make specific allegations as to the inadequacy of the state procedure). Although Respondent has alleged an independent and adequate procedural bar, Petitioner has simply argued the merits of his claim and has not put the adequacy of Oklahoma's remand procedure at issue. <u>See</u> Dkt. ## 3, 23. As a result, he cannot demonstrate that Oklahoma's procedural bar is inadequate and his ground thirteen claim of ineffective assistance of trial counsel is procedurally barred.

This Court may not consider Petitioner's procedurally barred claims unless he is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered.  See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941-42 (10th Cir. 1997).  The cause standard requires a petitioner to "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S. 152, 168 (1982).  A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 494 (1991).

*Cause and Prejudice*

In his reply, Petitioner concedes that nine of his issues were not raised on direct appeal. However, Petitioner attributes his failure to raise these claims on direct appeal to ineffective assistance of his appellate counsel (Dkt. # 23 at 24).  It is well established that, in certain circumstances, counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default.  See Murray v. Carrier, 477 U.S. 478, 488-89 (1986). However, the ineffective assistance of appellate counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  Id. at 489; Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In this case, Petitioner did raise a claim of ineffective assistance of appellate counsel on post-conviction appeal.

Further, the assistance provided by appellate counsel must rise to the level of a constitutional violation under the two-pronged standard established in <u>Strickland</u>. Petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial. <u>Strickland</u>, 466 U.S. at 687; <u>Hickman v. Spears</u>, 160 F.3d 1269, 1273 (10th Cir. 1998). In assessing an ineffective assistance of appellate counsel claim, the Tenth Circuit Court of Appeals has held that "the relevant questions are whether appellate counsel was 'objectively unreasonable' in failing to raise these . . . claims on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise these claims, [Petitioner] 'would have prevailed on his appeal.'" <u>Neill v. Gibson</u>, 278 F.3d 1044, 1057 (10th Cir. 2001); <u>Cargle v. Mullin</u>, 317 F.3d 1196, 1202 (10th Cir. 2003). In analyzing an appellate ineffectiveness claim based upon failure to raise an issue on appeal, the Court must examine the merits of the omitted issue. <u>Neill</u>, 278 F.3d at 1057; <u>Cargle</u>, 317 F.3d at 1202. If the issue is meritless, its omission will not constitute deficient performance. <u>Id.</u>

In this case, appellate counsel omitted the following issues on direct appeal which Petitioner believes were meritorious:

**1.   Fingerprint evidence (ground 5)**

Fingerprint expert Robert Yerton testified that a latent print found at the scene of the robbery matched a known print from Petitioner. <u>See</u> Tr. Trans. May 12-16, 2003, Vol. III at 562. In ground five, Petitioner challenges the admission of Mr. Yerton's testimony. He claims the trial court abused its discretion by allowing Mr. Yerton to testify and instructing the jury that it could consider the testimony (Dkt. # 3 at 30). Respondent alleges that admissibility of evidence is a state law matter that is not properly before the Court in this habeas proceeding. However, for purposes of

23

determining whether ineffective assistance of appellate counsel in not raising this issue can satisfy the cause standard in order to excuse the procedural bar, this Court must examine the merits of the issue.

In Oklahoma, it has always been permissible to put in evidence "for the purpose of identification of the defendant, testimony as to his personal appearance, his hair, his eyes, his complexion, marks, scars, teeth, his hands and the like." Lester v. State, 416 P.2d 52, 55 (Okla. Crim. App. 1966). The Lester court noted that "[f]ingerprints are but the tracings of physical characteristics or the lines between the fingers." Id. Further, it is well established under Oklahoma law that admission of expert testimony is within the trial court's discretion. See, e.g., Warner v. State, 144 P.3d 838, 860 (Okla. Crim. App. 2006). The trial court did not abuse its discretion in allowing Robert Yerton's expert testimony regarding his fingerprint analysis to be considered by the jury. Because the underlying claim is without merit, Petitioner's appellate counsel was not ineffective for failing to raise the claim. Appellate counsel ineffectiveness does not serve as cause to excuse the procedural bar of Petitioner's ground five claim.

**2.      Illegal arrest (ground 6)**

In ground six, Petitioner asserts that his Fourth and Fifth Amendment rights were violated because he was arrested without probable cause or warrant. Citing Stone v. Powell, 428 U.S. 465 (1976), Respondent argues that this issue is not cognizable because Petitioner was given the opportunity for a full and fair hearing in state court proceedings when the trial court conducted a Jackson v. Denno[5] hearing. See Dkt. # 9 at 27-28. However, in order to analyze whether appellate

---

[5]      Jackson v. Denno, 378 U.S. 368 (1964).

counsel's failure to raise this issue on direct appeal can excuse Petitioner's procedural default, the Court must examine the merits of the underlying issue and cannot rely on <u>Stone</u>.

Assuming *arguendo* that Petitioner was arrested without probable cause or a proper warrant, it is an established rule that an illegal arrest or detention does not void a subsequent conviction. <u>Frisbie v. Collins</u>, 342 U.S. 519 (1952).  Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." <u>Gerstein v. Pugh</u>, 420 U.S. 103, 119 (1975).  The Tenth Circuit has recognized the "long-standing rule, known as the <u>Ker-Frisbie</u> doctrine, that illegal police activity affects only the admissibility of evidence; it does not affect the jurisdiction of the trial court or otherwise serve as a basis for dismissing the prosecution." <u>United States v. Olivares-Rangel</u>, 458 F.3d 1104, 1110 (10th Cir. 2006) (citing <u>Ker v. Illinois</u>, 119 U.S. 436, 443 (1886); <u>Frisbie</u>, 342 U.S. at 522). Thus, Petitioner's detailed explanation in support of his contention that his arrest was illegal is not grounds for reversal of his convictions. Because his underlying claim is without merit, his appellate counsel's failure to raise the issue on direct appeal cannot serve as cause to excuse the procedural bar of ground six.

### 3.     Double punishment/double jeopardy (ground 7)

Petitioner asserts in ground seven that his convictions for robbery with a firearm and impersonating a police officer were violations of the statutory prohibition against double punishment found in Okla. Stat. tit. 21, § 11(A),[6] and the federal Constitutional privilege against double

---

[6]     Section 11(A) provides that an act or omission which is made punishable in different ways by different provisions may be punishable under any of such provisions, but in no case can it be punished under more than one section of law. Further, an acquittal or conviction and sentence under one section of law bars the prosecution for the same act or omission under any other section of law. <u>See</u> Okla. Stat. tit. 21, § 11(A).

25

jeopardy. Petitioner claims he was improperly convicted of more than one crime for the same act. Respondent argues that Petitioner was not subject to double punishment or double jeopardy because his convictions arose from two distinct acts.

> a)      Double punishment prohibition under state law

The crimes of Robbery with a Firearm (Count I) and Impersonating a Police Officer (Count II) are distinct and separate crimes, and require separate acts of a defendant. Under Oklahoma law in effect at the time of Petitioner's conviction, the State was required to prove the following elements for Count I: wrongful, taking, carrying away, personal property, of another, from the immediate presence of another, by force or fear, through use of a loaded or unloaded firearm. See Instruction No. 20, Original Record in Case No. CF-2002-3970 at 149. For Count II, the State was required to prove that Petitioner willfully, wrongfully, and without due authority, held himself out to be an officer. See Instruction No. 22, id. at 151.

A violation of Oklahoma's statutory prohibition against double punishment is not implicated in this case. Oklahoma's ban on double punishment is not violated when the offenses at issue are separate and distinct, requiring dissimilar proof. Littlejohn v. State, 181 P.3d 736, 742 (Okla. Crim. App. 2008); Hale v. State, 888 P.2d 1027, 1029 (Okla. Crim. App. 1995). It is clear that the crimes of robbery with a firearm and impersonating a police officer require different proof and are separate and distinct crimes. Thus, because Petitioner's appellate counsel did not omit a meritorious issue on direct appeal his failure to raise this issue did not result in constitutionally ineffective representation. Petitioner is not entitled to habeas corpus relief on this portion of his ground seven claim.

*b)    Double jeopardy*

Petitioner also contends that his convictions violated the Double Jeopardy Clause of the United States Constitution. The Double Jeopardy Clause protects against multiple punishments for the same offense.  North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989).  This protection is limited to ensuring "that the sentencing discretion of courts is confined to the limits established by the legislature," for it is the legislature that is vested with "the substantive power to prescribe crimes and determine punishments."  Ohio v. Johnson, 467 U.S. 493, 499 (1984).  Thus, when a course of criminal conduct violates two statutory provisions, the test to determine whether the punishments are "multiple," in violation of the Double Jeopardy Clause, is "essentially one of legislative intent." Id.; see also Missouri v. Hunter, 459 U.S. 359, 365 (1983). In the absence of clear legislative intent, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932).

In this case, although each of Petitioner's convictions resulted from his acts committed at the Toys R Us store on July 12, 2002, they are not violative of the Double Jeopardy Clause as events resulting from a single act, as argued by Petitioner. The misdemeanor crime of impersonating a police office and the felony crime of armed robbery are separate crimes under Oklahoma law. As noted hereinabove, they require proof of distinct facts and elements, even though some of the facts supporting each crime may overlap.  See Brown v. Ohio, 432 U.S. 161, 166 (1977) (holding that "[i]f each requires proof of a fact that the other does not, the Blockburger test is satisfied,

27

notwithstanding a substantial overlap in the proof offered to establish the crimes"). Petitioner was not subjected to double jeopardy violations as a result of his two convictions. Thus, his appellate counsel was not ineffective for failing to raise this claim on direct appeal and Petitioner has failed to show cause for his procedural bar of this issue.

### 4.       In court identifications (ground 8)

In his eighth ground for relief, Petitioner claims his due process rights were violated because no pre-trial lineup was conducted for identification by witness Amy Babb. He argues that Ms. Babb had no other choice than to identify him as the man who robbed the Toys R Us store, and the trial court abused its discretion in allowing the in-court identification. This Court does not agree.

In Manson v. Brathwaite, 432 U.S. 98 (1977), the Supreme Court restated the criteria to be examined in evaluating this issue: "[R]eliability is the linchpin in determining the admissibility of identification testimony . . . . The factors to be considered . . . .  include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation." Id. at 114 (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)). In Petitioner's case, Ms. Babb testified that she observed Petitioner in close range for approximately fifteen (15) minutes during the crime. Tr. Trans. May 12-16, 2003, at 465. She stated on cross-examination that she did not identify him because she had no choice, but "because he was the man that robbed the store." Id. at 440.  With the exception of a reference to a scar on his face, her identification was accurate and she was "100% sure" that Petitioner was the person who robbed the store (id. at 469). Finally, only two months had passed between the robbery and the first time she identified Petitioner at his preliminary hearing. See Trans. Prelim. Hr'g dated

28

Sept. 12, 2002. There is no evidence that the witness was the least bit uncertain during her in-court identification of Petitioner.  Weighing all the factors and considering the totality of the circumstances, there is no substantial likelihood of misidentification by Ms. Babb.  Failure of Petitioner's appellate counsel to raise this meritless claim on direct appeal does not excuse Petitioner's procedural default. Habeas relief shall not be granted on this ground.

**5.      Effect of prior acquittal on count 3 (ground 9)**

At Petitioner's first trial in February 2003, he was acquitted of a third count of impersonating a police officer at a Ross Dress for Less store. See Tr. Trans. Feb. 11-14, 2003, Vol. II at 400. When the jury announced it was deadlocked on Counts I and II, the trial judge declared a mistrial. Id. Petitioner argues in his ninth ground that the trial judge abused his discretion in allowing a new trial on Counts I and II after he was acquitted on Count III. He asserts, again, that the retrial exposed him to double jeopardy. Having previously decided that Petitioner was not the subject of a double jeopardy violation, the Court finds no merit in this ground nine claim. Omission of this claim on direct appeal by Petitioner's appellate counsel can not serve as cause to excuse his procedural default. Habeas relief is denied on ground nine.

**6.      Court abuse of discretion (ground 10)**

In this proposition of error, Petitioner claims that the state improperly amended the original information by filing a separate document containing a second page with prior convictions, and that the trial court abused its discretion in allowing the second page to be considered. Although Petitioner explains in detail the factual basis for his complaint, he provides no legal authorities to support his conclusion that the trial court abused its discretion in allowing a later filing of a second page to the information.

A charging instrument is sufficient under constitutional standards if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.  See Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997). The amended information was filed on September 27, 2002, several months before Petitioner's first trial. The Court finds that under the facts of this case, Petitioner had fair notice of the charges against him sufficient to respond and to prepare an adequate defense. Petitioner's claim that the trial court improperly allowed a second page to be added to the information is without merit.  Omission of the claim by appellate counsel can not serve as an excuse for Petitioner's procedural bar of this issue.

### 7.    Prejudicial photos (ground 11)

In his next claim of error, Petitioner argues that admission of certain photographs had no probative value and were presented solely for the purpose of stirring the emotions of the jury. See Dkt. # 3 at 14. Specifically, Petitioner complains that the trial court should not have allowed the admission of photos showing the cash drawer and the handcuffs used on the store manager. The Court notes that the photos were not gruesome or graphic. The photographs were clearly more probative than prejudicial, and the trial court did not abuse its discretion by admitting the photos into evidence. See United States v. Soundingsides, 820 F.2d 1232, 1243 (10th Cir. 1987) (noting that trial court's discretion in balancing prejudicial effect and probative value of photographic evidence is rarely disturbed). Petitioner's objection to the admission of these photos is without merit, and his appellate counsel was not ineffective for failing to raise the issue on direct appeal.

### 8.    Insufficient evidence (ground 12)

Petitioner's next claim is that there was insufficient evidence presented at trial to support his convictions for armed robbery and impersonation of a police officer. The Court disagrees. A sufficiency of the evidence claim must be viewed "in the light most favorable to the prosecution." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Further, the Court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. Although Petitioner claims he was convicted on circumstantial evidence, "both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction." Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). As detailed more fully in ground four above, the evidence against Petitioner was strong. The Court has no doubt that any rational jury could have found the elements of the crimes committed by Petitioner beyond a reasonable doubt. Petitioner's claim has no merit and the omission of this issue on direct appeal will not excuse his procedural default of the insufficient evidence claim.

### 9.    Ineffective assistance of trial counsel (part of ground 13)

Finally, Petitioner claims that his trial counsel was ineffective for failing to challenge the inc-court identification of Petitioner and for failing to object to prosecutorial misconduct "on several instances." See Dkt. # 3 at 16. The merits of each of the underlying claims of attorney ineffectiveness have been rejected by this Court in previous sections of this opinion. Petitioner offers no additional argument or authorities in ground thirteen to support his claim of ineffective assistance of either trial or appellate counsel. Accordingly, Petitioner is not entitled to habeas relief on this claim.

*Fundamental miscarriage of justice*

The fundamental miscarriage of justice exception to the doctrine of procedural bar is applicable only when a petitioner asserts a claim of actual innocence.  Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence.  Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316.  Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake.'" Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted). Petitioner does not claim that he is innocent of the crimes at the Toys R Us store. He simply makes the conclusory statement that he has shown "what miscarriage of justice has/is taken place." See Dkt. # 23 at 25. The fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claims are not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's claims set forth in grounds 5-13.  Coleman v. Thompson, 510 U.S. 722, 724 (1991). He is not entitled to habeas corpus relief on those claims.

32

*CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for a writ of habeas corpus (Dkt. # 2) is **denied**.  A separate judgment shall be entered in this matter.

**DATED** this 2nd day of March, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT